UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
WILLIAM F. SORIN,                                              :

                                                              :

                              Plaintiff,          :          OPINION AND ORDER

                                                              :

        -v.-
                                                              :          15 Civ. 6774 (GWG)

U.S. DEPARTMENT OF JUSTICE,                    :

                              Defendant.          :
----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff William F. Sorin has brought this suit under the Freedom of Information Act, 5

U.S.C. § 552 ("FOIA"), against the United States Department of Justice ("DOJ") to obtain

records relating to Sorin's prosecution by the United States Attorney's Office for the Eastern

District of New York ("EDNY") in 2006 and 2007.  DOJ has moved for summary judgment.[1]

---

        [1] See Notice of Motion for Summary Judgment, filed May 24, 2017 (Docket # 38);
Defendant's Memorandum of Law in Support of Motion for Summary Judgment, filed May 24,
2017 (Docket # 39) ("Def. Mem."); Declaration of David Luczynski, filed May 24, 2017
(Docket # 40) ("Luczynski Decl."); Plaintiff's Memorandum in Opposition to Defendant's
Motion for Summary Judgment, filed June 26, 2017 (Docket # 44) ("Pl. Mem."); Attachment to
Plaintiff's Memorandum in Opposition to Defendant's the [sic] Motion for Summary Judgment
(annexed to Pl. Mem.) ("Sorin Attachment"); Defendant's Reply Memorandum of Law in
Further Support of its Motion for Summary Judgment, filed July 17, 2017 (Docket # 45);
Plaintiff's Reply Memorandum in Opposition to Defendant's Motion for Summary Judgment,
filed Aug. 1, 2017 (Docket # 46) ("Pl. Reply").

        The declaration of David Luczynski includes an index of documents designed to provide
"a summary of the government's withholdings."  Luczynski Decl. ¶ 33; id. Ex. I.  Such an index
is commonly referred to as a "Vaughn Index" after the case of Vaughn v. Rosen, 484 F.2d 820
(D.C. Cir. 1973); see John Doe Agency v. John Doe Corp., 493 U.S. 146, 149 n.2 (1989) (A
Vaughn Index "usually consists of a detailed affidavit, the purpose of which is to permit the
court system effectively and efficiently to evaluate the factual nature of disputed information.")
(internal quotation marks and citation omitted).

The parties have consented to disposition of the case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, DOJ's motion is granted.

I. BACKGROUND

Sorin's FOIA request seeks documents from 2006 to 2007 relating to Sorin's own prosecution and guilty plea in connection with a scheme to backdate options. See Sorin Attachment at 1, 6. As Sorin describes it, options backdating occurs when a company offers an employee stock options as part of that employee's compensation package, but "backdates" the grant date of that option to a date on which the company's stock was a lower price. See Sorin Attachment at 1 n.1. When the recipient employee exercises his option to buy the stock, he does so at the lower price and thus realizes a greater monetary gain than if the grant date was accurate. See id. According to Sorin, this charge arose from his employment as the "main lawyer" of Comverse Technology Inc. ("Comverse"), a "supplier of equipment and software to most of world's largest telephone companies." See id. at 1. Sorin has annexed a 31-page attachment to his brief which asserts that, notwithstanding his guilty plea, EDNY engaged in wrongdoing in prosecuting him. See Sorin Attachment. Sorin states that his FOIA requests are intended to discover information that "may either support or conflict" with Sorin's views regarding the alleged improprieties that occurred during his prosecution. Pl. Mem. at 1.

On November 18, 2014, the Executive Office for United States Attorneys ("EOUSA") received an email from Sorin requesting "[a]ll documentary and other communications . . . relating to the prosecution captioned United States v. Sorin, 06 CR 723 (NGG) that commenced in 2006 in the Eastern District of New York." See Luczynski Decl. ¶ 4; see also Email from William F. Sorin to USAEO-FOIA Requests (annexed as Ex. A to Luczynski Decl.). This email was forwarded to Dorla Henriquez at EDNY. Luczysnki Decl. ¶ 6. Henriquez searched

EDNY's records.  Id. ¶ 6.  As part of this search, Henriquez used the "LIONS" system, a computer system used "to track cases and to retrieve files pertaining to cases and investigations," to find records relating to Sorin's request.  Id. ¶ 7.  "LIONS" allows users to search records by "a defendant's name, the . . . United States' Attorney's Office internal administrative number[], and the district court case number for any court cases."  Id.

After identifying responsive files through the "LIONS" system, Henriquez recovered the archived paper file for Sorin's criminal prosecution.  Id. ¶¶ 7-8.  Henriquez sent the contents of this file to EOUSA, which reviewed the contents, and on May 29, 2015, sent six pages of documents from this file to Sorin.  Id. ¶ 8; see also Letter from Susan B. Gerson to William Sorin (annexed as Ex. B to Luczynski Decl.).  After Sorin filed the instant complaint on August 26, 2015, see Complaint for Injunctive Relief, filed Aug. 26, 2015 (Docket # 1), Henriquez conducted an additional search of this file and provided EOUSA for release to Sorin an additional 29 pages while withholding 23 pages of responsive records pursuant to several FOIA exemptions.[2]  See Luczynski Decl. ¶ 9; see also Second Letter from Susan B. Gerson to William Sorin (annexed as Ex. C to Luczynski Decl.).  Henriquez also searched EDNY's electronic records for archived emails containing the word "Sorin," but uncovered no responsive records.  See Luczynski Decl. ¶ 10.  The IT department explained that because the Assistant U.S. Attorney ("AUSA") assigned to prosecute Sorin's case left in December 2013, only those emails generated in the five years prior to her departure were archived.  See id.  As such, no emails relating to Sorin's prosecution, which ended in 2007, remained.  See id.; Sorin Attachment at 1.

In March 2016, Henriquez identified 36 boxes of documents relating to the prosecution

---

[2]  The claimed FOIA exemptions, and their applicability to the documents withheld in this case, are discussed in greater detail in Section III.B below.

of Sorin's co-defendant, Jacob "Kobi" Alexander.  See Luczynski Decl. ¶¶ 11-12.  Alexander's

prosecution was still ongoing at that time because Alexander had fled to Namibia after his

indictment.  See id. ¶ 11.  Due to the voluminous nature of these documents, and the fact that a

preliminary inspection revealed that many of these documents were not relevant to Sorin's FOIA

request, DOJ and Sorin agreed to narrow DOJ's search of these documents.  See id. ¶ 12-13;

Stipulation Modifying FOIA Request (annexed to the Letter from Peter Aronoff to the Court,

filed Mar. 18, 2017 (Docket # 34)) ("Stipulation").  Under the Stipulation, the parties agreed that

DOJ would search the physical and electronic case files for the criminal cases of Sorin and

Alexander — as well as emails from the AUSAs who worked on the cases — for documents

created between March 1, 2006, and August 31, 2017.  See Luczynski Decl. ¶¶ 14-15;

Stipulation ¶¶ 2, 4.  In addition, the Stipulation provided that, in lieu of Sorin's original request,

DOJ would search for documents falling into only the following categories:

> Communications between EDNY prosecutors and Dickstein Shapiro, counsel for
> the Special Committee of the board of Comverse, Inc . . . [d]ocuments showing an
> alleged admission of guilt by Sorin to internal investigators . . . [d]ocuments
> showing an attorney proffer by members of the firm Skadden, Arps, Meagher &
> Flom LLP . . . [c]ommunications among the staff of law enforcement agencies
> about the prosecution of Sorin's criminal case . . . [and n]otes of law enforcement
> meetings about the prosecution of Sorin's criminal case.

Luczynski Decl. ¶ 16 (internal quotation marks and citations omitted); see also Stipulation ¶ 5.

Following entry into the stipulation, Henriquez conducted additional searches that

revealed more responsive documents.  With respect to "[c]ommunications between EDNY

prosecutors and Dickstein Shapiro," Henriquez manually searched portions of the Alexander file

that were likely to contain documents relating to this topic, and found approximately 500 pages

of potentially responsive documents.  See id. ¶ 18.  On October 14, 2016, the EOUSA released

28 pages of these documents and withheld 482 pages on the grounds that they would either

violate grand jury secrecy or interfere with Alexander's then ongoing criminal proceeding. <u>See</u> <u>id.</u> ¶¶ 18-20; <u>see also</u> Letter from Peter Aronoff to William F. Sorin (annexed as Ex. D to Luczynski Decl.); Letter from Thomas Anderson to William Sorin (annexed as Ex. E to Luczynski Decl.). On April 17, 2017, after Alexander's criminal conviction became final, DOJ released an additional 165 documents that were previously withheld due to Alexander's ongoing criminal proceeding, and withheld 203 pages. <u>See</u> Luczynski Decl. ¶ 30; Letter from Kevin Krebs to William Sorin (annexed as Ex. H to Luczynski Decl.).

With respect to "[d]ocuments showing an alleged admission of guilt by Sorin to internal investigators . . . [and d]ocuments showing an attorney proffer by members of the firm Skadden, Arps, Meagher & Flom LLP," an AUSA assigned to Alexander's criminal case searched the portions of Alexander's file that the AUSA believed were most likely to contain relevant materials, and found "notes of Sorin's own interview with internal investigators," which DOJ released in full on January 17, 2017. Luczynski Decl. ¶ 21; <u>see also</u> Second Letter from Thomas Anderson to William Sorin (annexed as Ex. F to Luczynski Decl.).

With respect to "[c]ommunications among the staff of law enforcement agencies about the prosecution of Sorin's criminal case . . . [and n]otes of law enforcement meetings about the prosecution of Sorin's criminal case," Henriquez searched both Sorin's and Alexander's case files and located two sets of responsive documents in Alexander's file that were within the stipulated date range. <u>See</u> Luczynski Decl. ¶ 23. DOJ withheld all of these documents pursuant to several claimed exemptions to the FOIA statute. <u>See</u> <u>id.</u>; <u>see also</u> Second Letter from Kevin Krebs to William F. Sorin (annexed as Ex. G to Luczynski Decl.).

DOJ also searched electronic records, including the archived emails and archived non-email electronic files of the AUSA assigned to Sorin's case. <u>See</u> Luczynski Decl. ¶¶ 24-29.

With respect to the archived non-email electronic files, an AUSA searched for files and folders in the stipulated date range containing the words "Comverse" or "Sorin," as well as for documents that "did not obviously relate solely to another defendant" or "were otherwise obviously responsive to the request as modified by the Stipulation."  See id. ¶ 28-29.  These searches yielded a copy of Sorin's plea agreement, which had already been produced, and eight documents that were withheld in full pursuant to claimed FOIA exemptions.  See id. ¶¶ 28-29. EDNY states that "no additional searches are likely to yield responsive documents."  See id. ¶ 32.

## II. LAW GOVERNING FOIA ACTIONS

FOIA's general purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978) (citations omitted); accord Nat'l Archives & Record Admin. v. Favish, 541 U.S. 157, 171 (2004) (explaining that the purpose of FOIA is to allow the general public to learn "what their Government is up to") (internal quotation marks and citation omitted); Associated Press v. U.S. Dep't of Def., 554 F.3d 274, 283 (2d Cir. 2009) ("[FOIA] was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.") (internal quotation marks and citation omitted).  FOIA favors broad disclosure and "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions."  A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994); accord Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys., 601 F.3d 143, 147 (2d Cir. 2010); Associated Press, 554 F.3d at 283; Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d 356, 369 (S.D.N.Y. 2002).  Federal courts conduct a de

novo review of an agency's decision to withhold records requested under FOIA, Bloomberg, 601

F.3d at 147, and all statutory exemptions must be construed narrowly, id.; see also Associated

Press, 554 F.3d at 283.  Materials falling within the terms of a FOIA exemption, however, need

not be disclosed.  See, e.g., Associated Press, 554 F.3d at 283-84; Halpern v. FBI, 181 F.3d 279,

287 (2d Cir. 1999).

To prevail on a motion for summary judgment in a FOIA action, the government "has the

burden of showing that its search was adequate and that any withheld documents fall within an

exemption to the FOIA."  Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994);

accord U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755

(1989); Bloomberg, 601 F.3d at 147; Associated Press, 554 F.3d at 283.  Summary judgment

may be granted on the basis of affidavits or declarations "supplying facts . . . giving reasonably

detailed explanations why any withheld documents fall within an exemption."  Carney, 19 F.3d

at 812; accord Associated Press v. U.S. Dep't of Justice, 549 F.3d 62, 65 (2d Cir. 2008).

Allegations contained in such an affidavit must be provided a "presumption of good faith."

Carney, 19 F.3d at 812 (internal quotation marks and citation omitted).

III.  APPLICATION

We begin by assessing the adequacy of DOJ's search.  We then discuss whether DOJ has

properly asserted the exemptions it claims.

A.  Adequacy of Search

The Second Circuit has held that "[w]hen a plaintiff questions the adequacy of the search

an agency made in order to satisfy its FOIA request, the factual question it raises is whether the

search was reasonably calculated to discover the requested documents, not whether it actually

uncovered every document extant."  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d

Cir. 1999) (quoting <u>SafeCard Servs., Inc. v. Sec. & Exch. Comm'n</u>, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  "This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness."  <u>Adamowicz v. IRS</u>, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).  As already noted, the adequacy of this search may be established by "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search."  <u>Carney</u>, 19 F.3d at 812 (footnote omitted).

Here, Sorin states that he "has not disputed the adequacy of the search performed by Defendant," though he qualifies this statement by noting that he "has not requested production of such information as would be necessary to ascertain whether the search was either adequate or inadequate."  <u>See</u> Pl. Reply at 1.  Sorin does not indicate any additional sources of information or search methods that DOJ could have used to locate responsive documents.

In any event, the Luczynski Declaration describes in detail DOJ's procedures for locating sources of responsive documents, including using the LIONS computer system.  <u>See</u> Luczynski Decl. ¶¶ 6-8.  It describes the methods used to search these sources and the documents those methods retrieved.  <u>See id.</u> ¶¶ 9-13, 17-30.  The declaration describes the search parameters to which Sorin stipulated and DOJ's efforts to comply with these parameters.  <u>See id.</u> ¶¶ 13-30. We find that the Luczynski Declaration shows that DOJ's searches were "reasonably calculated to discover the requested documents."  <u>Grand Cent. P'ship, Inc.</u>, 166 F.3d at 489.

Summary judgment is therefore granted on the reasonableness of DOJ's search, and DOJ is not required to search for any additional documents.  <u>See</u> <u>Garcia</u>, 181 F. Supp. 2d at 366 ("If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue.") (citation omitted).

B. Withholdings

 1. Exemption 3

DOJ asserts that it may withhold 43 documents pursuant to 5 U.S.C. § 552(b)(3)

("Exemption 3").

 Exemption 3 allows an agency to withhold documents that are "specifically exempted

from disclosure by statute" as long as the statute "requires that the matters be withheld from the

public in such a manner as to leave no discretion on the issue" or "establishes particular criteria

for withholding or refers to particular types of matters to be withheld."[3] "The sole issue for

decision regarding the applicability of FOIA Exemption [3] . . . 'is the existence of a relevant

statute and the inclusion of withheld material within the statute's coverage.'" Florez v. Cent.

Intelligence Agency, 829 F.3d 178, 192 (2d Cir. 2016).

 The relevant "statute" here is Federal Rule of Criminal Procedure 6(e). Rule 6(e)

provides that "an attorney for the government," among others, "must not disclose a matter

occurring before the grand jury." See Fed. R. Crim. P. 6(e)(2)(vi). While Rule 6(e) was not

enacted as legislation, it is well-settled that the Rule is considered a "statute" within the meaning

of Exemption 3. See, e.g., Garcia, 181 F. Supp. 2d at 378 (collecting cases). Rule 6(e) "covers

not only the evidence actually presented to [the grand jury] but also anything that may tend to

reveal what transpired before it, such as summaries of grand jury testimony." United States v. E.

Air Lines, Inc., 923 F.2d 241, 244 (2d Cir. 1991). Thus, the Second Circuit has upheld a

government agency's withholding of "grand jury subpoenas, information identifying grand jury

---

[3] Exemption 3 also requires that if the statute pursuant to which documents are being withheld was enacted after the "OPEN FOIA Act of 2009," then it must "specifically cite[] to this paragraph." 5 U.S.C. § 552(b)(3)(B). Because Rule 6(e) was enacted before 2009, this aspect of Exemption 3 does not apply.

witnesses, information identifying records subpoenaed by the grand jury, and the dates of grand jury testimony." Peltier v. FBI, 218 F. App'x 30, 32 (2d Cir. 2007).

Documents 1-30, 32, 34, and 36-41 are letters from Dickstein Shapiro to EDNY that accompanied productions of documents requested by grand jury subpoenas, referred to specific grand jury subpoenas, and "include discussions of both what material was sought by the grand jury and what material was produced." Luczynski ¶ 51; see also Vaughn Index. Similarly, documents 44-45, 72, 94, and 98 are all letters or emails from prosecutors at EDNY to Dickstein Shapiro that refer to "specific grand jury subpoenas [and] to specific parties and discuss which particular documents were sought." Luczynski ¶ 52; see also Vaughn Index. Because these documents accompanied grand jury subpoenas and discuss the particular documents being sought, the disclosure of any of these documents would reveal "information identifying records subpoenaed by the grand jury." See Peltier, 218 F. App'x at 32. Thus, DOJ was permitted to withhold these documents pursuant to Exemption 3.

Additionally, DOJ was permitted to withhold these documents in full. FOIA generally requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). However, "courts have held that disclosure is not required when, after segregation, all that is left is 'a few nuggets of non-intertwined' information." Am. Civil Liberties Union v. U.S. Dep't of Justice, 252 F. Supp. 3d 217, 227 (S.D.N.Y. 2017) (quoting Lead Indus. Ass'n, Inc. v. OSHA, 610 F.2d 70, 88 (2d Cir. 1979)). According to DOJ, the only substantive content contained in these short letters are "descriptions of information sought by or produced to the grand jury." See Def. Mem. at 22; Luczynski Decl. ¶ 73. In other words, after redaction of the exempt material, nothing of substance would remain. This statement is entitled

to a "presumption of good faith," Carney, 19 F.3d at 812 (internal quotation marks and citation omitted), and Sorin has not rebutted that presumption. Accordingly, we find that no information contained in these documents was "reasonably segregable," and DOJ was entitled to withhold these documents in full.

While Sorin does not directly explain how Exemption 3 was improperly asserted, we note that throughout his submissions, Sorin alleges that his prosecution was wrongful in various ways. For example, Sorin alleges that EDNY placed "irresponsible reliance on the law firm [Dickstein Shapiro] hired by the special committee of the Board of Directors of Comverse in contriving the premises of the Prosecution." Pl. Mem. at 1. Thus, Sorin alleges that his "FOIA request is for information demonstrating the existence and scope of such improper deputization of lawyers neither hired by nor responsible to the government, and the prosecutors' benighted acceptance without minimal diligence of information given them by obviously compromised sources." Pl. Mem. at 3. Indeed, Sorin has annexed to his brief a lengthy attachment in which he alleges misconduct by DOJ and Dickstein Shapiro. See Sorin Attachment. Given Sorin's pro se status, we will liberally construe these allegations to challenge DOJ's withholdings when misfeasance and other wrongful acts may present a basis for requiring the disclosure of certain documents that are otherwise exempt from FOIA requests. See McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (briefs submitted by pro se litigants must be read to "raise the strongest arguments they suggest") (internal quotation marks and citation omitted).

With respect to Exemption 3, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) states that grand jury materials may be disclosed at "the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand

11

jury."  While there is case law casting doubt on whether this exception can be used to overcome

an otherwise proper withholding pursuant to Exemption 3, see Fund for Constitutional Gov't v.

Nat'l Archives & Records Serv., 656 F.2d 856, 868 (D.C. Cir. 1981) (noting that Rule 6(e)'s

"ban on disclosure is for FOIA purposes absolute"), Sorin's allegations of DOJ misfeasance as

they relate to these documents do not turn on matters that occurred "before" the grand jury, but

instead concern the allegedly improper relationship between DOJ and law firm Dickstein

Shapiro.  See Sorin Attachment at 3-6, 13-24.  Thus, even if this exception applied in the FOIA

context, it would not bar the Government from withholding the documents pursuant to

Exemption 3.

     2.  Exemption 5

DOJ has withheld 47 documents pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5").

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums

or letters that would not be available by law to a party other than an agency in litigation with the

agency."  Under Exemption 5, "[t]he question at issue regarding the intra- or inter-agency

requirement is whether the document either originated from or was provided to an entity that is

not a federal government agency, in which case the document is not protected by the

exemption."  Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 77 (2d Cir. 2002).  The Exemption

protects from disclosure, "agency documents which would not be obtainable by a private litigant

in an action against the agency under normal discovery rules."  Id. at 76 (internal quotation

marks omitted).  Thus, "Courts have interpreted Exemption 5 to encompass traditional common-

law privileges against disclosure, including the work-product doctrine."  Nat'l Council of La

<u>Raza v. Dep't of Justice</u>, 411 F.3d 350, 356 (2d Cir. 2005).[4]

    The work product privilege is codified in part in Federal Rule of Civil Procedure 26(b)(3), which protects from discovery "documents and tangible things" if they are prepared "in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). A party seeking to protect documents under the work product privilege must demonstrate that the document "(1) was prepared in anticipation of litigation and (2) was prepared by or for a party, or by his representative." <u>Wultz v. Bank of China Ltd.</u>, 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). The "in anticipation of litigation" element requires a showing that "the document can fairly be said to have been prepared or obtained <u>because</u> of the prospect of litigation." <u>United States v. Adlman</u>, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (internal quotation marks and citation omitted). This privilege may protect factual material, "including the result of a factual investigation" — so-called fact work product — as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" — so-called opinion work product. <u>In re Grand Jury Subpoena Dated July 6, 2005</u>, 510 F.3d 180, 183 (2d Cir. 2007), <u>cert. denied</u>, 553 U.S. 1094 (2008).

    DOJ contends that it withheld 10 documents (documents 62-71 in the Vaughn Index) pursuant to Exemption 5. These documents were all sent by EDNY AUSAs — or in one case, an SEC attorney — to other government personnel working on the Comverse matter, including

---

[4] Because all of the documents withheld pursuant to Exemption 5 constitute work product, we do not reach DOJ's contention that many of these documents may also be withheld under Exemption 5 because of the attorney-client privilege. <u>See</u> Def. Mem. at 15-17.

EDNY AUSAs, FBI agents, and IRS agents.  See Luczynski Decl. ¶ 39-40.  DOJ states that these emails "relate to a then-ongoing criminal investigation and discuss litigation strategy, legal theories, proper investigatory steps based on findings in the investigation, and issues that might arise over the course of potential prosecutions."  Id. ¶ 39.  DOJ also states that document 62 contains "a witness interview, recording the mental impressions of SEC attorneys" and document 66 is an email chain containing an email concerning litigation strategy in the Comverse case.  Id. ¶¶ 39-40.  DOJ states that "[n]one of these documents were sent to third parties outside of the government or to government personnel who were not directly involved in the Comverse investigation."  Id. ¶ 39.

These documents were properly withheld pursuant to Exemption 5.  Because they were communications among AUSAs, SEC attorneys, FBI agents, and IRS agents, they were "inter-agency or intra-agency memorandums or letters," Exemption 5, and prepared "by or for [a] party or its representative" to Sorin's federal prosecution in 2006 and 2007, see Fed. R. Civ. P. 26(b)(3)(A).  Also, inasmuch as these documents discuss "litigation strategy, legal theories, proper investigatory steps based on findings in the investigation, and issues that might arise over the course of potential prosecutions," Luczynski Decl. ¶ 39, as well as the fact that all of these emails were sent in 2006 when Sorin's prosecution was ongoing, see id. ¶¶ 4, 14, 39, the Government has shown that the documents were prepared "because of" Sorin's prosecution. Adlman, 134 F.3d at 1203.  We note that the fact that the SEC was a party to one of these communications does not prevent the assertion of the work product privilege because "communications between federal prosecutors and federal administrative agencies involved in parallel investigations and litigation regarding the same parties are also within the scope of Rule 26(b)(3)(A)."  United States v. Acquest Transit LLC, 319 F.R.D. 83, 97 (W.D.N.Y. 2017)

(citations omitted).

DOJ also withheld 75 pages of notes, memoranda, and drafts found in electronic form and the physical case files DOJ searched. See Luczynski ¶ 41. DOJ states that the authorship of some of these documents cannot be determined from the documents themselves. See id. ¶ 42. However, DOJ notes that because these records contain information regarding legal strategies, "refer directly to meetings among the AUSAs by using the names or initials of the prosecutors," and were found in the Sorin and Alexander case files, it is clear "they were written by EDNY AUSAs who were working on the Comverse matter in 2006 and 2007." Id. In light of these circumstances, we conclude that the DOJ has satisfied its burden of establishing that these notes were authored either by EDNY AUSAs or their agents and thus are within the ambit of the work product privilege. See Fed. R. Civ. P. 26(b)(3)(A).

DOJ puts these 75 pages of documents into four categories. The first category (documents 148-155) were found in Sorin's criminal case file and include draft letters and handwritten notes recording conversations with attorneys and potential witnesses, and describing other matters related to the case. See Luczysnki Decl. ¶ 43. For example, documents 148 and 149 are drafts of letters written by the AUSA assigned to Sorin's case, and documents 150 through 154 are handwritten notes that "record conversations between attorneys; note potential witnesses; make financial calculations relevant to the case; set out topics for discussion at meetings; record AUSAs' impressions of meetings with other attorneys and witnesses; and highlight potentially important facts." Id. Document 155 is an interview memorandum which contains markings indicating important passages. See id. The second category (documents 73-91) comes from the Alexander file, and includes "information on financial calculations related to Comverse . . . notes highlighting specifics facts of interest to the case . . . [and] questions about

how certain facts, if proved or if found impossible to prove, might affect the case." Id. ¶ 44. The third category (documents 92 and 93) comes from the Alexander file and consists of a handwritten record containing "views about investigative steps and legal strategy, as well as impressions of the evidence gathered at that point," and an "electronic printout" of "an agenda of a meeting of law enforcement personnel." Id. ¶ 45. The documents in the fourth category (documents 94-101) were found in the electronic files of the AUSA assigned to Sorin's case, and include outlines prepared by that AUSA "of the investigative steps taken in the case. . . . [and] of the outstanding legal and factual issues in the case to date." Id. ¶ 46. One of these documents is a redline draft of "an internal EDNY memorandum about the Comverse case prepared by" several AUSAs. Id. This draft discusses the investigation's progress and contains legal analysis of the case. See id.

In light of these descriptions, we find that these documents were prepared "because of" Sorin's or Alexander's prosecution, Adlman, 134 F.3d at 1203, and thus constitute work product, see id. Thus, these documents may be withheld pursuant to Exemption 5. See Tigue, 312 F.3d at 76.

Sorin argues that DOJ has improperly asserted the work-product protection, and thus withheld documents pursuant to Exemption 5, with respect to communications between government agencies and Dickstein Shapiro. See Pl. Reply at 2. Exemption 5 generally will be found inapplicable if the withheld materials were previously disclosed under circumstances "inconsistent with the maintenance of secrecy from the disclosing party's adversary." Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001); accord United Techs. Corp. v. NLRB, 632 F. Supp. 776, 784 (D. Conn.) ("Exemption 5 work product privilege is not automatically waived by disclosure of the work product to a third party. Courts considering

16

whether the work product privilege has been waived have looked to whether the transferor and transferee share common interests in litigation, and to whether the disclosure is consistent with maintaining secrecy against opponents.") (internal quotation marks and citation omitted), aff'd, 777 F.2d 90 (2d Cir. 1985); see also In re Steinhardt Partners, L.P., 9 F.3d 230, 236 (2d Cir. 1993) (finding waiver of work-product privilege upon disclosure of memorandum to entity that "stood in an adversarial position"). Here, however, DOJ has not asserted that any correspondence with Dickstein Shapiro is work product that may be withheld pursuant to Exemption 5. To the extent that the drafts identified as documents 94 and 98 were addressed to Dickstein Shapiro, the drafts were not actually sent and thus no disclosure occurred. See Luczynski Decl. ¶ 46. Case law makes clear that drafts of documents not actually disclosed to an adversary are generally protected as work product. See, e.g., Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) ("The lawyer's drafts [of affidavits], which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation."). Thus, the documents were properly withheld.[5]

---

[5] It is unclear if Sorin is arguing that his allegations of misconduct by DOJ during his prosecution have any bearing on the legal issues applicable to FOIA. To the extent Sorin's brief could be construed as suggesting that the crime/fraud exception should apply, it is unclear whether a court construing FOIA could properly order disclosure based on the applicability of that exception. See, e.g., FTC v. Grolier Inc., 462 U.S. 19, 28 (1983) ("Only by construing the exemption to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered"); contra Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec., 2014 WL 6850977, at *5 (S.D.N.Y. Dec. 3, 2014). In any event,"[a] party seeking to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed — or has been attempted — and that the communications in question were in furtherance of the fraud or crime." See Amusement Indus., Inc. v. Stern, 293 F.R.D. 420, 426 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). Nothing in Sorin's allegations shows that a "crime" or "fraud" was committed by the EDNY.

Sorin briefly argues that the materials at issue should not have been withheld in full.  Pl. Mem. at 3.  As already noted, FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  Generally, however, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."  Am. Civil Liberties Union, 252 F. Supp. 3d at 227 (internal quotation marks omitted) (alteration in original) (quoting Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997)).  For the reasons already stated, the documents DOJ has withheld were created in anticipation of Sorin's prosecution, and thus constitute work product in their entirety.

        3.  Exemptions 6 and 7(C)

DOJ has withheld 45 interview memoranda generated by the law firm Dickstein Shapiro pursuant to the exemptions contained in 5 U.S.C. §§ 552(b)(6) ("Exemption 6") and (b)(7)(C) ("Exemption 7(C)").

Exemption 6 provides that the government may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Exemption 7(C) permits DOJ to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  "Exemption 7(C) is more protective of privacy than Exemption 6" because it requires only that the disclosure "could reasonably be expected to constitute" an "unwarranted" invasion of privacy, whereas Exemption 6 bars disclosures that "would constitute" a "clearly unwarranted" invasion of privacy.  U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S.

487, 496 n.6 (1994) (emphasis added); see also N.Y. Times Co. v. U.S. Dep't of Homeland Sec.,

959 F. Supp. 2d 449, 452 (S.D.N.Y. 2013) (Exemption 7(C) "has a lower threshold for what

invasion of privacy will trigger the exemption").  Because we find that all of DOJ's withholdings

were justified under Exemption 7(C), it is not necessary to address Exemption 6.

As a threshold matter, the materials compiled to support the investigation and

prosecution of Sorin's unlawful options backdating activities were "records or information

compiled for law enforcement purposes" under Exemption 7(C).  See, e.g., Wolfson v. United

States, 672 F. Supp. 2d 20, 31-32 (D.D.C. 2009) (records "compiled in connection with a

criminal investigation into violations of federal law involving [inter alia] . . .securities fraud"

were compiled for law enforcement purposes) (internal quotation marks and citation omitted).

Even though Dickstein Shapiro originally created many of these documents, Exemption 7(C)

applies to documents "compiled" by the government regardless of their original source.  See

John Doe Agency, 493 U.S. at 153 ("A compilation, in its ordinary meaning, is something

composed of materials collected and assembled from various sources or other documents")

(citations omitted); see also Fedders Corp. v. FTC, 494 F. Supp. 325, 328 (S.D.N.Y.)

(unsolicited complaint letters directed to the Federal Trade Commission were compiled for "law

enforcement purposes" under Exemption 7(A) when, at the time of the FOIA request, the letters

constituted "an important element in the record of an active investigation"), aff'd, Fedders Corp.

v. FTC, 646 F.2d 560 (2d Cir. 1980).

Where records are compiled for law enforcement purposes, a "two-part test" governs the

application of Exemption 7(C).  N.Y. Times, 959 F. Supp. 2d at 452.  "First, the court

determines 'whether there is any privacy interest in the information sought.'"  Id. (quoting

Associated Press, 554 F.3d at 284).  Then the Court must "balance the public interest in

disclosure against the [privacy] interest Congress intended the Exemption to protect." Reporters

Comm. for Freedom of Press, 489 U.S. at 776; accord Associated Press, 554 F.3d at 284.

The privacy interest protected by this exemption "encompass[es] the individual's control

of information concerning his or her person." Reporters Comm. for Freedom of Press, 489 U.S.

at 763; accord Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs, 958 F.2d 503, 510

(2d Cir. 1992). "It is well established that identifying information such as names, addresses, and

other personal information falls within the ambit of privacy concerns under FOIA." Associated

Press, 554 F.3d at 285. Moreover, "witnesses . . . have a privacy interest in not being associated

with a law enforcement investigation, and in protecting the details of their statements given in

the course of such investigations." Conti v. U.S. Dep't of Homeland Sec., 2014 WL 1274517, at

*18 (S.D.N.Y. Mar. 24, 2014) (citations omitted).

Against this privacy interest, the Court must balance the public's interest in obtaining

such information. This generally requires "show[ing] that the public interest sought to be

advanced is a significant one, an interest more specific than having the information for its own

sake" and also that "the information is likely to advance that interest." Favish, 541 U.S. at 172.

When the requester asserts that he is requesting documents to reveal government impropriety,

then "the requester must establish more than a bare suspicion in order to obtain disclosure," but

must instead "produce evidence that would warrant a belief by a reasonable person that the

alleged Government impropriety might have occurred." Favish, 541 U.S. at 174; accord

Associated Press, 554 F.3d at 285.

DOJ withheld in full 45 interview memoranda generated by Dickstein Shapiro's internal

investigation into the options backdating scheme. See Luczynski ¶¶ 57-58. DOJ states that

these notes "contain the identities of individuals who are potential witnesses in a criminal

investigation," "personal information about the interviewed individuals' professional and educational history," "financial information about individuals [including] . . . information about how and when they received specific forms of incentive compensation," as well as information about individuals who worked at Comverse but were not interviewed or prosecuted. Id. ¶¶ 61-64. Such information may be used to identify the interviewees, and thus "falls within the ambit of privacy concerns under FOIA." Associated Press, 554 F.3d at 285. Additionally, these notes relate to the criminal case against Sorin and "summarize witness responses to questions about stock options backdating, including how the scheme began, when it began, how it operated, who was involved in designing and perpetrating it, who knew about the scheme, and the amounts of money participants gained." Luczynski Decl. ¶ 59. The notes also "reveal potential witnesses to the fraudulent conduct and provide a strong indication of what various individuals knew about the backdating scheme." Id.

The Supreme Court has noted that "what constitutes identifying information regarding a subject [] must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar." Dep't of Air Force v. Rose, 425 U.S. 352, 380 (1976). Thus, courts in this district have noted that a subject has a privacy interest not just in personally identifying information, but also in information that, if revealed, might lead to the subject's identification by someone familiar with the subject matter. See, e.g., Human Rights Watch v. Dep't of Justice Fed. Bureau of Prisons, 2015 WL 5459713, at *6 (S.D.N.Y. Sept. 16, 2015) ("even though the information sought does not identify an inmate by name or number, a reader could put together the mosaic of information about each inmate, identify them, and learn other personal information about them"), reconsidered on other grounds, 2016 WL 3541549 (S.D.N.Y. June 23, 2016). Here, DOJ notes that the information each interviewee provided was "based on

[his or] her specific roles with Comverse." <u>See</u> Luczynski Decl. ¶ 74.  Thus, someone "with knowledge of the company's operations" might be able to identify the interviewees based on the information the interviewees provided, even if all explicit identifying information was redacted. <u>See</u> Def. Mem. at 22-23; Luczynski Decl. ¶ 74.  This statement is sufficient to show that the privacy interest DOJ seeks to protect extends not just to the explicit identifying information but also to the substantive statements actually given by the witnesses.

With respect to the public's interest in obtaining this information, Sorin asserts that these documents may help him demonstrate "whether [EDNY] acted responsibly, in good faith, and in accordance with their obligations as attorneys and public servants, in pursuing [Sorin's] prosecution." <u>See</u> Pl. Reply at 1.  Sorin focuses mostly on his assertion that EDNY placed "improper reliance . . . on lawyers engaged by a committee of the Comverse Technology board of directors." <u>See</u> Pl. Reply at 2.  But this allegation does not show any "Government impropriety" sufficient to outweigh the privacy interests at stake.  <u>Favish</u>, 541 U.S. at 174.  While Sorin finds it improper that DOJ used witness interviews conducted by a private law firm to further its criminal investigation, the Court is not aware of any bar to DOJ considering such witness interviews in deciding whether to investigate or prosecute, or in using them to seek a plea from a potential defendant.  Nor has Sorin pointed to any case so suggesting.  Because Sorin has not shown a strong public interest in obtaining this information, the balance required by Exemption 7(C) is easily struck in favor of preserving the personal privacy of the interviewees.

To the extent Sorin argues that there exists segregable non-exempt material, we do not so find.  It is true that "Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears; any non-exempt information must be segregated and released." <u>Sussman v.</u>

U.S. Dep't of Justice, 2008 WL 2946006, at *9 (E.D.N.Y. July 29, 2008) (quoting Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000)). However, we have already noted that what constitutes identifying information must be assessed "from the vantage of those who would have been familiar." Rose, 425 U.S. at 380. On this basis, courts have permitted witness interviews to be withheld in full pursuant to Exemption 7(C) after noting the danger that even redacted witness statements might facilitate the speaker's identification. For example, in Alirez v. NLRB, 676 F.2d 423 (10th Cir. 1982), the court permitted the National Labor Relations Board to withhold in full "informant statements" relating to an unfair labor practice charge that the FOIA plaintiff filed against his employer. Id. at 425, 428. These informants' statements contained allegations of "assaultive conduct" on the plaintiff's part, as well as other improper workplace behavior. Id. at 425. The Court found the "deletion of names and other identifying data" inadequate to prevent invasions of privacy because "[t]he requested documents relate[d] to a few incidents involving about a dozen people," and thus their disclosure would enable the recipient "to identify readily the informant and persons discussed in each document." Id. at 427-28. Other courts have similarly held with respect to witness interview memoranda arising from criminal investigations. See, e.g., Boyd v. Exec. Office for United States Attorneys, 161 F. Supp. 3d 1, 12 (D.D.C. 2015) (withholding witness memoranda pursuant to Exemption 7(C) after finding "a fair possibility that plaintiff would be able to identify the parties based on other information in the documents"), aff'd, 2016 WL 6237850 (D.C. Cir. Sept. 16, 2016), cert. denied, 2017 WL 2189412 (Oct. 2, 2017).

The Luczynski Declaration establishes with sufficient detail the likelihood that any statement recorded in these memoranda might facilitate a potential witness's or third party's identification. As already noted, these interviews relate to the witnesses' knowledge regarding

the stock options backdating scheme for which Sorin was prosecuted.  See Luczysnki Decl. ¶¶ 61-64.  The information provided was therefore dependent on each witness's role within the organization.  See id. ¶ 74.  Anyone who worked at a high level at Comverse — such as Sorin himself — would have significant insight into the identity of the speaker behind each interview.  See id. ¶ 74.  By contrast, Sorin has not provided this Court with any reason to believe that any portion of these interview memoranda may be segregable.  Based on these considerations, the interview memoranda are sufficiently similar to the "informant statements" in Alirez for the DOJ to withhold these documents in full.

Finally, we do not believe that in camera review of the interview memoranda, as permitted by 5 U.S.C. § 552(a)(4)(B), is warranted.  Although in camera review "is appropriate when agency affidavits are not sufficiently detailed to permit meaningful assessment of the exemption claims," it is "generally disfavored."  PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 252-53 (D.C. Cir. 1993).  We have already concluded that the Luczynski Declaration is sufficiently detailed for the Court to determine that DOJ was justified in withholding the interview memoranda in full.  Moreover, in camera review would be of dubious utility under the circumstances.  As observed by another court, "lacking the knowledge of an [] insider, the Court is not in a position to make line-by-line determinations of which statements from a witness interview would expose the witness's identity."  Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 31 (D.D.C. 2012).  Because the Court is not familiar with Comverse's day-to-day operations, "it is doubtful whether the court could select which portions to release with the degree of certainty required adequately to protect the interests of employees who wish to avoid identification."  Alirez, 676 F.2d at 428 (citation omitted).

Thus, we find there is no reason to conclude that in camera review of the witness

memoranda is required, or that any portion of the witness interviews are segregable.

IV. CONCLUSION

The defendant's motion for summary judgment (Docket # 38) is granted and the case is

dismissed. The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

Dated: November 27, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

25